CASSVILLE BEVERAGE CO. et al. v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. September 12, 1924.)

No. 3208.

Intoxicating liquors ⬭134—To sustain charge of illegal sale, liquor must contain specified percentage of alcohol when sold.

Under an indictment charging illegal sale of beer containing one-half of 1 per cent. or more of alcohol, an instruction that, though the beer contained less than such per cent. when sold, defendants might be convicted if it was sold for beverage purposes and they had knowledge that it would develop that percentage of alcohol before its intended use, *held* erroneous.

In Error to the District Court of the United States for the Western District of Wisconsin.

Criminal prosecution by the United States against the Cassville Beverage Company and Andrew J. Lindner  Judgment of conviction, and defendants bring error. Reversed and remanded.

H. M. Wilkie, of Madison, Wis., for plaintiffs in error.

Stanley M. Ryan, of Janesville, Wis., for defendant in error.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge. Plaintiffs in error were tried on two counts of an indictment, acquitted on count charging manufacturing intoxicating liquor for beverage purposes containing half of 1 per cent. or over of alcohol, and convicted and sentenced on count charging sale of such liquor. Various errors are alleged, of which we need consider only the one predicated on the court's charge to the jury.

It appears plaintiffs in error were conducting a brewery at Cassville, Wis., and in August, 1921, sold certain kegs and bottles of liquor made there to one who was in the act of loading it on a boat at Cassville when agents of the government took samples of the liquor, and also later took sample bottles of liquor from the brewery, all of which samples were some weeks afterwards analyzed, and some found to contain over and some under the permissible percentage of alcohol—those taken from the boat being mostly in excess. It was contended on the trial that, if the analysis showed an excess of alcohol, it was because of fermentation which took place after the sale, and while the samples analyzed were in possession of agents of the government. The bulk of the evidence was directed to the subject of the treatment and care of the samples after seizure, and the chemical effects and changes both before and after seizure. In this state of the record the court charged the jury:

"That if you find from the evidence and are convinced beyond a reasonable doubt that, though in fact the beverage at the time of completion of its manufacture under the count charging manufacture, or its sale under the count charging sale, contained less than one-half of 1 per cent. of alcohol by volume, nevertheless if you find it established beyond a reasonable doubt the prod-

uct was fit to use for beverage purposes, and was so manufactured, bottled, and kegged by the defendants that the alcoholic content thereof was to defendants' knowledge bound to increase under such handling and care as the defendants knew it would receive to a volume equal to or exceeding one-half of 1 per cent. before it could be put to the uses for which it was intended by the defendants it should be put, then and in that event you may consider such beverage as having been manufactured or sold, as the case may be, with an alcoholic content equal to or exceeding one-half of 1 per cent.

"Now with reference to that last situation, it will be necessary to find, in order to convict the defendants or either of them as I have indicated, that they knew that the product was bound to increase in its alcoholic content beyond the prescribed limit, and in that regard you will have to find they knew and intended to violate the law."

The count on which alone the judgment of conviction rests charged that the named defendants "did sell, for beverage purposes, certain intoxicating liquor containing one-half of 1 per cent. or more of alcohol by volume, to wit, 24 half barrels of beer, 6 quarter barrels of beer, and 10 cases of beer, to one Christ. Lenstra, the selling of which intoxicating liquor as aforesaid was then and there prohibited and unlawful, and in violation of section 3 of title 2 of the act of Congress known as the National Prohibition Act" (Comp. St. Ann. Supp. 1923, § 10138½aa). Under the charge of the court, if at the time of the sale the liquor sold contained no alcohol whatever, and was absolutely nonintoxicating, conviction nevertheless would have been authorized, provided the jury believed from the evidence that the defendants knew and intended that before the liquor would be consumed it would contain at least one-half of 1 per cent. of alcohol by volume. The charge assumes that at the time of sale the liquor was fit for beverage purposes, notwithstanding its then lesser alcoholic content, or indeed the absence of alcohol. Its theory seems to be that the liquor sold was to the knowledge of defendants so made or packed that before its use it would develop alcohol in excess of the statutory permissible maximum.

Whatever might be the liability of those who knowingly plot to supply to others instrumentalities for violating the law, or who make, possess, or sell a preparation, compound, or substance designed thereafter in the hands of the vendee to develop into an intoxicating beverage with prohibited alcoholic percentage, we are not here dealing with any such indictment or count, but merely with one which alleges sale of liquor then containing one-half of 1 per cent. or over of alcohol.

The charge was erroneous, and manifestly harmful to plaintiffs in error, and the judgments are accordingly reversed, and the cause remanded.